Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive, Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff Justin Weber

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN WEBER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COMBATANT GENTLEMEN, INC., a Delaware corporation; VISHAAL MELWANI; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br>**1. TRADEMARK INFRINGEMENT**<br>**2. INDUCING INFRINGEMENT**<br><br>Demand for Jury Trial |

Complaint

Plaintiff Justin Weber avers:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this action because it arises under the Lanham Act, 15 U.S.C. § 1121(a), 28 U.S.C. § 1338(a).

2. Venue is proper in this District, in that the Defendants reside in this District, 28 U.S.C. § 1391(b)(1).

**Nature of Action**

3. This is an action for willful infringement by Defendant Combatant Gentlemen, Inc. ("Combatant Gentlemen") of Weber's registered mark -- "Combatant®" -- in the field of apparel. Combatant Gentlemen is using the confusingly similar mark "Combatant Gentlemen," also in the field of apparel. Defendant Vishaal Melwani ("Melwani") has directed and induced the infringing conduct of Combatant Gentlemen.

4. Weber is entitled to Defendants' profits and treble damages as a result of Defendants' infringing conduct. Weber is faced with irreparable injury, and is thus entitled to injunctive relief. Weber should also receive an award of costs and attorneys' fees.

**Parties**

5. Weber is an individual residing in San Clemente, California.

6. On information and belief, Combatant Gentlemen is a Delaware corporation with its principal offices at 1326 Scholarship, Irvine, CA.

7. On information and belief, Melwani is an individual residing in Orange County, California.

8. Weber has no knowledge of the true names and capacities of the parties sued as Doe Defendants 1-10, inclusive, and therefore sues them using fictitious names. Weber will amend this Complaint to identify these Doe Defendants specifically if and when their true names and capacities are ascertained.

9. On information and belief, through their acts or omissions, Does 1-10 are responsible, along with the other specifically-named defendants, for the injuries alleged, and therefore are liable for them. On information and belief, at all times, the specifically-named defendants and Does 1-10 were principals, agents, and representatives of each other, or acting in concert with one another, such that the acts or omissions of any of them can be ascribed to the others.

**The "Combatant" Mark**

10. Weber is the owner of Trademark Reg. No. 3950373, registered April 26, 2011, for the mark "Combatant®" in relation to apparel ("'373 Mark"). A true and correct copy of the registration certificate for the '373 Mark is attached hereto as Exhibit A. Weber's "Combatant®" mark has been used in interstate commerce for more than five years and has become incontestable. *15 U.S.C. § 1065.*

**Weber's Combatant Line of Apparel**

11. Weber is experienced in the design and sale of apparel and apparel brands.

12. Weber conceived and marketed a line of apparel under the mark "Combatant®." Weber sold his "Combatant®" line of apparel in interstate commerce by no later than 2010. Weber has sold apparel under the "Combatant®" mark continuously through the present.

13. Weber's marketing aim is to appeal to young men, women and youth who would be attracted to the mark "Combatant" as denoting someone who strives in or out of a ring to achieve their goals.

14. Weber markets and sells his "Combatant®" line of apparel primarily online, https://combatantstreetwear.com. Weber sells Combatant clothing for men, women and youth. The apparel includes T-Shirts, hoodies, shorts, long sleeve and tanks.

15. Combatant merchandise has been sold and marketed through events and celebrity wear. Combatant merchandise has been worn at events by mixed martial arts fighters in and out of the ring and also reggae music star Eek a Mouse.

16. Weber markets the "Combatant" line through Facebook, Instagram and other social media outlets.

17. Fox has been a significant corporate purchaser of Combatant Street Wear.

**Combatant Gentlemen**

18. On information and belief, Melwani formed Combatant Gentlemen and began selling apparel online through the "Combatant Gentlemen" mark some time in 2013.

19. Defendant's mark is a reproduction, counterfeit, copy or colorable imitation of Weber's registered mark "Combatant®". The first word is identical. The second word, "Gentlemen," is generic and does not ameliorate the confusion likely to result from use by Defendant of the term "Combatant" in apparel.

20. Combatant Gentlemen targets the same market targeted by Weber, namely, young men attracted to a mark that denotes striving to succeed.

21. Combatant Gentlemen, like Weber, markets and sells its "Combatant Gentlemen" line of apparel online, www.combatgent.com.

22. Combatant Gentlemen, like Weber, markets the "Combatant Gentlemen" line through Facebook, Instagram and other social media outlets.

23. Combatant Gentlemen has fostered marketplace confusion by employing in advertising martial and athletic images that evoke the same feel as that marketed by Weber in relation to his "Combatant" line.

24. On information and belief, Combatant Gentlemen filed an application for registration of its "Combatant Gentlemen" mark on July 1, 2014

1  with the United States Patent & Trademark Office ("USPTO") (the
2  "Application").  On July 29, 2014 the USPTO issued an Office Action denying
3  the Application.  Said the USPTO: "Registration of the applied-for mark is
4  refused because of a likelihood of confusion with the mark in U.S. Registration
5  No. 3950373."  The July 29, 2014 Office Action reflected the conclusion of the
6  USPTO that the two marks were very similar and the good and services related.
7  Thus, concluded the USPTO, registration of Combatant Gentlemen's mark
8  would create a likelihood of consumer confusion.

9        25.    On January 29, 2015 Combatant Gentlemen submitted a response
10  to the July 29, 2014 Office Action that amended the Application in certain
11  respects.  The USPTO responded with a February 23, 2015 Office Action again
12  stating the USPTO's refusal to register Combatant Gentlemen's mark because
13  of the likelihood of confusion with the "Combatant®" mark.

14        26.    On August 21, 2015 Combatant Gentlemen sent a response to the
15  USPTO, supported by arguments and numerous exhibits, to make the case that
16  the Combatant Gentlemen mark was not likely to create consumer confusion.

17        27.    On October 13, 2015 the USPTO issued an Office Action stating,
18  having considered Combatant Gentlemen's additional arguments and evidence,
19  that the Office's refusal to register the Combatant Gentlemen was "final" on
20  grounds of likelihood of confusion with the "Combatant®" mark.

21        28.    On April 13, 2016 Combatant Gentlemen submitted to the USPTO
22  a Request for Reconsideration After Final Action.  That Request submitted
23  additional argument and evidence to the effect that the Combatant Gentlemen
24  mark was supposedly not confusingly similar to the "Combatant®" mark.

25        29.    On April 28, 2016 the USPTO issued an Office Action denying
26  Combatant Gentlemen's Request for Reconsideration.  The USPTO said
27  Combatant Gentlemen still had not resolved the issues that resulted in denial of
28  its Application and that it had not presented any new or compelling evidence to

1 cause the USPTO to change its conclusion that the Combatant Gentlemen mark
2 was confusingly similar to the "Combatant®" mark.

3     30.    Combatant Gentlemen urged to the USPTO that consumers will
4 supposedly not be confused because Weber offers street wear and Combatant
5 Gentlemen offers casual to office wear.  This is wholly unpersuasive.  Both
6 companies target the same market, young men.  Both companies market their
7 apparel through online channels and social media.  Both companies are using
8 their marks in relation to apparel.  The first word of the Combatant Gentlemen
9 mark is identical to Weber's distinctive "Combatant®" mark and the second
10 word, Gentlemen, is generic and does nothing to ameliorate confusion.  The
11 apparel market is replete with single sources of goods offering lines from street
12 through office wear.  Consumers could easily be confused into believing that
13 Combatant and Combatant Gentlemen represent a single source of apparel that
14 offer the young gentleman all clothes he will need throughout his week, from
15 gym to club to office.

16     31.    Weber is faced with irreparable injury.  Product line expansion is a
17 key objective in any industry.  Here, Combatant Gentlemen has entered the
18 marketplace with a confusingly similar mark applied to the same goods,
19 apparel, in a fashion that is proximate to Weber's goods.  Combatant
20 Gentlemen's infringing conduct has effectively taken away Weber's ability to
21 expand his Combatant line into collared shirts, slacks or suits.  Brand confusion
22 can turn away potential investors or strategic partners.  Combatant Gentlemen's
23 infringing behavior thus dampens Weber's ability to expand his lines and obtain
24 any such investment or strategic partnership.

**First Claim for Relief – Against Combatant Gentlemen and Does 1-5**

**Direct Trademark Infringement**

27     32.    For his First Claim for Relief, Weber incorporates by reference the
28 averments of ¶¶ 1-31 above.

- 5 -

Complaint

33. Combatant Gentlemen and Does 1-5 have used in commerce a reproduction, counterfeit, copy or colorable imitation of Weber's registered mark "Combatant®" in connection with the sale, offering for sale, distribution and advertising of goods on or in connection with which such use is likely to cause confusion, or to cause mistake, or deceive.

34. As an actual and proximate result of Combatant Gentlemen's infringing conduct, Weber is entitled to Combatant Gentlemen's profits, treble damages, costs of suit and attorneys' fees.

35. Weber is faced with irreparable injury and lacks an adequate remedy at law. Weber is therefore entitled to injunctive relief.

### Second Claim for Relief – Against Melwani and Does 6-10
### Inducing Trademark Infringement

36. For his Second Claim for Relief, Weber incorporates by reference the averments of ¶¶ 1-35 above.

37. Melwani and Does 6-10 have, with actual or constructive knowledge of direct trademark infringement, encouraged and directed Combatant Gentlemen and Does 1-5 to continue to infringe Weber's mark. Melwani and Does 6-10 are thus liable for inducing or contributing to direct trademark infringement.

### PRAYER

Weber prays for entry of judgment including the following relief:

A. Disgorgement of Defendants' profits from their infringing activities;

B. Weber's actual damages in a sum to be proven at time of trial, in no event less than $1,000,000;

C. Trebling of damages;

D. Costs and attorneys' fees;

E. Preliminary and permanent injunctive relief;

F.   Such other and further relief as the Court deems appropriate.

DATED:  July 26, 2016              SPILLANE TRIAL GROUP PLC

                                   By: _____
                                        Jay M. Spillane
                                        Attorneys for Plaintiff Justin Weber

## JURY DEMAND

Weber demands trial by jury.

DATED:  July 26, 2016              SPILLANE TRIAL GROUP PLC

                                   By: _____
                                        Jay M. Spillane
                                        Attorneys for Plaintiff Justin Weber

# Exhibit A

# United States of America
## United States Patent and Trademark Office

# COMBATANT

**Reg. No. 3,950,373**  
**Registered Apr. 26, 2011**  
**Int. Cl.: 25**  
**TRADEMARK**  
**PRINCIPAL REGISTER**

WEBER, JUSTIN (UNITED STATES INDIVIDUAL)
201 SANTA MONICA BLVD., #640
SANTA MONICA, CA 90401

FOR: ATHLETIC APPAREL, NAMELY, SHIRTS, PANTS, JACKETS, FOOTWEAR, HATS AND CAPS, ATHLETIC UNIFORMS; BOXING SHORTS; CAMOUFLAGE SHIRTS; CAMP SHIRTS; CLOTHING FOR ATHLETIC USE, NAMELY, PADDED SHIRTS; CLOTHING FOR ATHLETIC USE, NAMELY, PADDED SHORTS; FISHING SHIRTS; GYM SHORTS; HOODED SWEAT SHIRTS; LONG-SLEEVED SHIRTS; OPEN-NECKED SHIRTS; SHIRTS; SHIRTS AND SHORT-SLEEVED SHIRTS; SHORT-SLEEVED OR LONG-SLEEVED T-SHIRTS; SHORT-SLEEVED SHIRTS; SHORTS; SPORT SHIRTS; SPORTS SHIRTS WITH SHORT SLEEVES; SWEAT SHIRTS; SWEAT SHORTS; T-SHIRTS; WEARABLE GARMENTS AND CLOTHING, NAMELY, SHIRTS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 6-5-2010; IN COMMERCE 7-10-2010.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 85-094,167, FILED 7-27-2010.

STEVEN PEREZ, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office